In the Matter of Charles Glynn BATLA and Anna-Lorey Florence Batla, Debtors.

Bankruptcy No. 80–02758A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

June 30, 1981.

Thomas I. Kent, Jr., Marietta, Ga., for petitioners.

John W. Bland, Decatur, Ga., for respondent.

## ORDER

A. D. KAHN, Bankruptcy Judge.

This case raises serious questions about the efforts of Trust Company Bank ("Bank") and its counsel, John W. Bland, Jr., to collect a debt in violation of the automatic stay and the order of discharge. A contempt hearing was held on January 26, 1981, and after hearing evidence and oral argument, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtors, Charles Glynn Batla and Anna-Lorey Batla, filed a joint petition for relief pursuant to Chapter 7 of the Bankruptcy Reform Act of 1978 (the "Code"). Relief was ordered on August 12, 1980.

On the debtors' petition the "Trust Company of Georgia", Lenox Square Branch, 3393 Peachtree Road, Atlanta, Georgia, was listed as an unsecured creditor on Schedule

A–3. In the "Statement of Financial Affairs" the "Trust Co. Bank" was identified as the location of Mr. Batla's business bank account, and "Trust Company Bank v. Charles G. Batla" was identified as a suit pending at the time of filing the petition.

■ The Bank presently maintains its Lenox Branch at 3393 Peachtree Road, the address to which the Court's orders and notices were sent. Of particular import is the "Notice For Meeting of Creditors and Fixing Times for Filing Complaints to Object to Discharge And Complaints To Determine Dischargeability of Particular Debts, Combined With Notice Thereof And Of the 11 U.S.C. § 362(a) Automatic Stay of Creditor Actions," which was mailed to the Bank on August 19, 1980, and the "Discharge of Debtor," which was mailed to the Bank on October 24, 1980. No mail was returned to the court. The address being correct, delivery is presumed.

Mr. Batla's indebtedness to the Bank arose in 1977 when he obtained an unsecured loan from the Bank to pay his daughter's medical bills. The Note went into default, and the Bank filed suit against Mr. Batla in the State Court of Cobb County on or about June 6, 1980. Judgment was entered against Mr. Batla on August 6, 1980.

After obtaining the state court judgment the Bank, through its counsel, Mr. Bland, instituted garnishment proceedings against Garlock, Inc., Mr. Batla's employer, in the State Court of Fulton County, *after* the debtors had filed bankruptcy, first on August 15, 1980, and again on September 15, 1980.

The order of discharge for each debtor was entered on October 24, 1980, and as previously stated, mailed by the Clerk's office to the Bank on the same date. This formal notice was not the *only* notice of discharge that the Bank received, for on the *same* day, the debtors' counsel, Mr. Kent, called the Bank's attorney, Mr. Bland, and advised him that Mr. Batla had been discharged in bankruptcy. Mr. Kent also *mailed* to Mr. Bland a copy of the discharge order and a copy of Schedule A–3 of the bankruptcy petition.

Nevertheless, on December 3, 1980, Mr. Bland filed yet a *third summons of garnishment* against Mr. Batla's employer.

The debtors then filed their motion for contempt on December 24, 1980, praying that the Bank be ordered to show cause why it should not be held in contempt; that the debtors be reimbursed by the Bank for attorney's fees and expenses of the motion; that the state court action be stayed; and that they be ordered such other relief as this court deemed appropriate.

On January 21, 1981, this court entered an order temporarily restraining the Bank and Mr. Bland from the prosecution of any process to collect the debt, and further excused the employer from answering the then pending garnishment summons.

At the hearing on January 26, 1981, it was demonstrated that Mr. Batla suffered substantial damages as a result of the Bank's violations of orders of this court. Mr. Batla lost his job, which earned him $30,000 annually, and also lost the benefits accompanying it, which included the use of a car, and insurance, all as a direct result of the Bank's garnishment efforts and particularly the third summons served upon debtor's employer.

## CONCLUSIONS OF LAW

Jurisdiction of this civil contempt proceeding is vested in this court by virtue of 28 U.S.C. § 1471 (1981), and 28 U.S.C. § 1481 (1981). *See also* § 405 of the Bankruptcy Reform Act of 1978.

The issue at bar is whether the Bank should be found in contempt of this court as a result of its efforts to collect the debt from Mr. Batla.

■ First of all, the Bank and Mr. Bland violated the automatic stay, which is effective immediately upon the filing of a bankruptcy petition, by instituting garnishment proceedings. *See* Harvey A. Miller and Michael L. Cook, *A Practical Guide to the Bankruptcy Reform Act* 441 (1979). Mr. Bland filed the *second* garnishment summons *after* the Bank received notice of the filing of the bankruptcy petition. Such notice constitutes the knowledge required to support a finding of contempt. *See Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 54 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

■ Finally, in December, 1980, Mr. Bland flagrantly filed the *third* garnishment summons on behalf of the Bank. This filing occurred more than a month after the Bank and Mr. Bland had *not only* formal notice by this court of Mr. Batla's discharge, but also notice of the discharge as a result of personal communications with Mr. Kent. The filing of the third summons of garnishment clearly violated this court's discharge order and supports a finding of contempt. The order of discharge, entered pursuant to Section 524 of the Code, plainly stated: "All creditors whose debts are discharged by this order . . . are enjoined from commencing, continuing or employing *any* action, process or act to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived." *In re Batla*, No. 80–02758A (N.D.Ga. October 24, 1980) (Discharge of Debtor). 11 U.S.C. § 524(a)(2) (1981). [emphasis added]

Furthermore, it is clear that Mr. Batla's debt to the bank was discharged. A debtor in a Chapter 7 case must be granted a discharge unless one of the circumstances enumerated in Section 727 of the Code has been demonstrated. 11 U.S.C. § 727(a) (1981). No such circumstances were demonstrated in this case. In addition, Mr. Batla's debt to the Bank plainly fell within the umbrella of discharge described in Section 727(b) of the Code, which states in pertinent part:

> Except as provided in Section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from *all debts that arose before the date of the order for relief under this chapter*, . . . . (emphasis added)

11 U.S.C. § 727(b) (1981).

No complaints to determine dischargeability pursuant to Section 523 of the Code

were prosecuted during the pendency of this bankruptcy case. The subject debt arose in 1977, prior to the date of the order for relief. Mr. Batla was thus discharged of his debt to the Bank pursuant to Section 727 of the Code. 11 U.S.C. § 727(b) (1981).

In its defense the Bank asserted that Mr. Kent's phone call to Mr. Bland was the first notice that it had of the debtors' filing of their bankruptcy petition. This defense was based largely on its assertion that "Trust Company Bank," the Bank's true name, was not listed as a creditor of the debtor. Rather, the "Trust Company of Georgia" was listed on the debtors' schedule of creditors. The Bank showed that on November 12, 1974, the Atlanta Interim Bank merged with and into the "Trust Company of Georgia," with the "Trust Company of Georgia" continuing as the surviving corporation with the amended name of "Trust Company Bank."

■ The Bank's defense is *no* defense to a citation for contempt. The Bank had notice of the automatic stay. The Bank and Mr. Bland had actual knowledge of Mr. Batla's discharge, yet the garnishment continued. The fact that "Trust Company of Georgia" rather than "Trust Company Bank" was listed on the debtors' petition does not relieve the Bank from compliance with orders of this court. No one who has lived in Georgia, particularly the Bank itself, can seriously assert that listing "Trust Company of Georgia" on the bankruptcy petition rather than "Trust Company Bank," with the correct address constitutes anything less than notice to the Bank.

The actions of the Bank patently violated orders of this court. The Bank had knowledge of the discharge order, as well as the automatic stay, and acted without regard to orders of this court. The court concludes that the Bank should be held in contempt of court.

■ Furthermore, although the issue is not squarely before the court, the court finds that Mr. Batla complied with the requirements of the Code, and that his debt to the Bank is not one that could be excepted from discharge.

Section 523(a)(3) of the Code states in pertinent part:

A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt

neither listed nor scheduled under section 521(10) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or . . . .

11 U.S.C. § 523(a)(3)(A) (1981).

The debtors complied with Section 521 of the Code, referred to in Section 523 above, by "filing a list of creditors, and . . . a schedule of assets and liabilities, and a statement of the debtor's financial affairs . . . ." 11 U.S.C. § 521(1) (1981). The fact that the "Trust Company of Georgia" was identified instead of the "Trust Company Bank" on Schedule A–3 does not alter the conclusion that the debtors complied in all material respects with the mandate of Section 521 of the Code. For this case the "Trust Company of Georgia" at the Lenox Square Branch at 3393 Peachtree Road in Atlanta was the same thing as the "Trust Company Bank" at the Lenox Square Branch on 3393 Peachtree Road in Atlanta.

■ If there is an uncertainty about the order of discharge resulting from the listing in a debtor's schedules, a creditor may petition the bankruptcy court for a clarification of the discharge order with regard to its claim. *See* 11 U.S.C. § 523(a)(3) (1981); 11 U.S.C. § 523(c) (1981). Otherwise the creditor takes a calculated risk under threat of contempt, when he undertakes to make his own determination of what the order means. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192, 193, 69 S.Ct. 497, 500, 98 L.Ed. 599 (1948).

■ The next question is the measure of the sanction that should be imposed against the Bank. "Civil as distinguished from

criminal contempt is a sanction to enforce compliance with an order of the court or *to compensate for losses or damages sustained by reason of noncompliance.*" (citations omitted) (emphasis added) 336 U.S. at 191, 69 S.Ct. at 499. In this case the Bank's noncompliance with this court's order of discharge and the automatic stay resulted in Mr. Batla's being fired from a job paying $30,000 a year and losing the benefits that went along with it. Such a loss would be significant to anyone, but it is particularly egregious to a person who thought he was going to derive a "fresh start" from his bankruptcy.

In this case "the only possible remedial relief for such disobedience" is "to impose a fine for the use of the complainant, measured in some degree by the pecuniary injury caused by the act of disobedience." *Gompers v. Bucks Stove and Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911). The successful complainant is also entitled to recover costs from the defendant. *Id.*, 31 S.Ct. at 500.

Although the evidence of damages in this case was not lengthy, it did not have to be. It was unrebutted. The court concludes that Mr. Batla should be awarded $5,000.00 damages for the loss of his job and its accompanying benefits, as well as $500.00 in attorney's fees, and costs. In addition the Bank shall consent to the release of the funds already paid into the state court by Mr. Batla's former employer.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Mr. Batla's motion for contempt be GRANTED, and Trust Company Bank be found in contempt of court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Trust Company Bank pay damages, attorney's fees, and costs to Mr. Batla in conformity with this order, and that Trust Company Bank consent to the release of the funds paid into the state court, *instanter.*